## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

CC HOLDINGS, LLC,                              )
CC BRIARCLIFF, LLC,                            )
CONTINUUM COURTYARDS, LLC, and                 )
COURTYARDS BRIARCLIFF, LLC,                    )
                                               )
      Plaintiffs,                         )
                                               )
v.                                             )          No. 3:16-cv-00561
                                               )
EAST LAKE ACQUISITION                          )
COMPANY IV LLC,                                )
                                               )
      Defendant.                          )

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant East Lake Acquisition Company IV LLC ("**East Lake**"), by and through its

undersigned counsel, hereby submits the following Answer to Plaintiffs CC Holdings, LLC, CC

Briarcliff, LLC, Continuum Courtyards, LLC, and Courtyards Briarcliff, LLC (the "**Seller**

**Plaintiffs**") Complaint for Declaratory Judgment [R. 1.1] (the "**Complaint**") and Counterclaim

against the Seller Plaintiffs, and in support thereof, states and alleges as follows:

## EAST LAKE'S ANSWER TO THE COMPLAINT

1.      East Lake admits the allegations in paragraph 1 of the Complaint.

2.      East Lake admits the allegations in paragraph 2 of the Complaint.

3.      With respect to the allegations in paragraph 3 of the Complaint, East Lake admits

that it and the Seller Plaintiffs entered into that certain Purchase and Sale Agreement with an

effective date of May 19, 2016 (the "**Agreement**") and that the Agreement was amended

pursuant to that certain First Amendment of Purchase and Sale Agreement with an effective date

of June 30, 2016 (the "**First Amendment**") and that certain Second Amendment of Purchase and

Sale Agreement with an effective date of August 12, 2016 (the "**Second Amendment**") (collectively, the Agreement, First Amendment and Second Amendment shall be referred to herein as the "**PSA**"). East Lake states that the PSA speaks for itself and, therefore, denies any allegations that are inconsistent therewith.

4.      Paragraph 4 of the Complaint contains conclusory statements and/or legal conclusions to which no response is required.

5.      With respect to the allegations in paragraph 5 of the Complaint, East Lake states that the PSA speaks for itself and, therefore, denies any allegations that are inconsistent therewith. The remaining allegations in paragraph 5 contain conclusory statements and/or legal conclusions to which no response is required.

6.      East Lake denies the allegations in paragraph 6 of the Complaint.

7.      With respect to the allegations in paragraph 7 of the Complaint, East Lake states that the PSA speaks for itself and, therefore, denies any allegations that are inconsistent therewith.

8.      With respect to the allegations in paragraph 8 of the Complaint, East Lake admits that it sent the Seller Plaintiffs a letter dated July 22, 2016 advising the Seller Plaintiffs they are in default under the PSA (the "**Default Notice**"). East Lake states that the Default Notice speaks for itself and, therefore, denies any allegations that are inconsistent therewith.

9.      With respect to the allegations in paragraph 9 of the Complaint, East Lake states that the PSA speaks for itself and, therefore, denies any allegations that are inconsistent therewith.

4851-8062-9049.6

10.     With respect to the allegations in paragraph 10 of the Complaint, East Lake states that the Default Notice speaks for itself and, therefore, denies any allegations that are inconsistent therewith.  East Lake denies the remaining allegations in paragraph 10.

11.     East Lake denies the allegations in paragraph 11 of the Complaint.

12.     With respect to the allegations in paragraph 12 of the Complaint, East Lake states that Andrew White's July 20, 2016 email and "other communications" regarding the Seller Plaintiffs' default under the PSA (collectively, the "**Default Communications**") speak for themselves and, therefore, denies any allegations that are inconsistent therewith.  East Lake denies the remaining allegations in paragraph 12, but admits that the Seller Plaintiffs breached the PSA.

13.     With respect to the allegations in paragraph 13 of the Complaint, East Lake states that the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith.  East Lake denies the remaining allegations in paragraph 13.

14.     With respect to the allegations in paragraph 14 of the Complaint, East Lake states that the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith.  East Lake denies the remaining allegations in paragraph 14, but admits that the Seller Plaintiffs breached the PSA.

15.     With respect to the allegations in the first sentence of paragraph 15 of the Complaint, East Lake lacks knowledge or information sufficient to form a belief about the truth of such allegations and, therefore, denies the same.  East Lake denies the remaining allegations in paragraph 15.

16.     With respect to the allegations in paragraph 16 of the Complaint, East Lake states that the financial documents that the Seller Plaintiffs delivered to East Lake pursuant to the PSA

4851-8062-9049.6

(collectively, the "**Delivered Financial Documents**") and the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith. East Lake denies the remaining allegations in paragraph 16.

17.     With respect to the allegations in paragraph 17 of the Complaint, East Lake states that the Delivered Financial Documents and the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith. East Lake denies the remaining allegations in paragraph 17.

18.     East Lake denies the allegations in paragraph 18 of the Complaint.

19.     With respect to the allegations in paragraph 19 of the Complaint, East Lake states that the Delivered Financial Documents and the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith. East Lake denies the remaining allegations in paragraph 19.

20.     With respect to the allegations in paragraph 20 of the Complaint, East Lake states the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith.

21.     With respect to the allegations in paragraph 21 of the Complaint, East Lake states the Default Communications speak for themselves and, therefore, denies any allegations that are inconsistent therewith. East Lake further admits that the Seller Plaintiffs defaulted under the PSA and that East Lake asserted claims for damages based on the Seller Plaintiffs' default under the PSA. The remaining allegations in paragraph 21 contain conclusory statements and/or legal conclusions to which no response is required. To the extent the remaining statements and/or legal conclusions in paragraph 21 are construed as factual in nature, East Lake denies the same.

4851-8062-9049.6

## EAST LAKE'S DEFENSES TO THE COMPLAINT

1.     The Seller Plaintiffs have failed to state a claim against East Lake upon which relief can be granted.

2.     The Seller Plaintiffs' claim is barred and/or limited by the terms of the PSA.

3.     The Seller Plaintiffs' claim is barred and/or limited by their default under the PSA.

4.     East Lake states that it lacks sufficient knowledge or information on which to form a belief as to whether it may have additional defenses available to the Seller Plaintiffs' claim in the Complaint.  East Lake, therefore, reserves the right to amend its Answer to the Complaint and assert additional defenses that may become available during discovery in this action or otherwise, and hereby specifically reserves the right to amend its Answer for the purposes of asserting any such additional defenses.

WHEREFORE, having fully responded to Plaintiffs CC Holdings, LLC, CC Briarcliff, LLC, Continuum Courtyards, LLC, and Courtyards Briarcliff, LLC's Complaint for Declaratory Judgment, Defendant East Lake Acquisition Company IV LLC prays that judgment be entered in its favor and against the Seller Plaintiffs on the Seller Plaintiffs' declaratory judgment claim for relief, that the Complaint be dismissed *with prejudice*, and that East Lake be awarded such other and further relief as the Court deems just and proper under the circumstances including, without limitation, its reasonable attorneys' fees and costs for defending the Seller Plaintiffs' claim.

4851-8062-9049.6

## <u>EAST LAKE'S COUNTERCLAIM</u>

Defendant and Counterclaim Plaintiff East Lake Acquisition Company IV LLC ("**<u>East Lake</u>**"), by and through its undersigned counsel, and for its Counterclaim against Plaintiffs and Counterclaim Defendants CC Holdings, LLC, CC Briarcliff, LLC, Continuum Courtyards, LLC, and Courtyards Briarcliff, LLC (collectively, the "**<u>Seller Plaintiffs</u>**"), states and alleges as follows:

## <u>PARTIES</u>

1.      Defendant and Counterclaim Plaintiff East Lake is a Delaware limited liability company.  East Lake's sole member is ELCM Acquisition HoldCo LLC ("**<u>HoldCo</u>**"), a Delaware limited liability company.  HoldCo's sole member is East Lake Capital Management LLC ("**<u>ELCM</u>**"), a Delaware limited liability company.  ELCM's sole member is ELCM Partners LLC ("**<u>ELCMP</u>**"), a Delaware limited liability company.  ELCMP's sole member is Andrew White, who is a citizen of, and domiciled in, the State of Texas.

2.      Plaintiff and Counterclaim Defendant CC Holdings, LLC ("**<u>CCH</u>**") is a Tennessee limited liability company.  CCH's sole member is CSL Holdings, LLC ("**<u>CSL</u>**"), a Tennessee limited liability company.  CSL's sole member is Michael Mursten ("**<u>Mursten</u>**"), who is a citizen of, and domiciled in, the State of Tennessee.

3.      Plaintiff and Counterclaim Defendant CC Briarcliff, LLC ("**<u>Briarcliff</u>**") is a Tennessee limited liability company.  Briarcliff's sole member is CSL and CSL's sole member is Mursten, who is a citizen of Tennessee.

4.      Plaintiff and Counterclaim Defendant Continuum Courtyards, LLC ("**<u>Continuum</u>**") is a Tennessee limited liability company.  Continuum's sole member is CSL and CSL's sole member is Mursten, who is a citizen of Tennessee.

4851-8062-9049.6

5.    Plaintiff and Counterclaim Defendant Courtyards Briarcliff, LLC ("**Courtyards**") is a Tennessee limited liability company.  Courtyards' sole member is CSL and CSL's sole member is Mursten, who is a citizen of Tennessee.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.   More specifically, there is complete diversity of citizenship between the Parties as East Lake is a citizen of the State of Texas for diversity purposes and each of the Seller Plaintiffs are citizens of the State of Tennessee for diversity purposes.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the real property that is the subject of this action is situated in this judicial District and because East Lake and the Seller Plaintiffs (collectively, the "**Parties**") contractually agreed to this venue in Section 11.6 of that certain Purchase and Sale Agreement, dated May 19, 2016 (together with all amendments, the "**PSA**"), which provides, in pertinent part, that:

> THE PARTIES HERETO, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (A) SUBMIT TO PERSONAL JURISDICTION IN THE STATE OF TENNESSEE OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS AGREEMENT, (B)  AGREE THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN KNOX COUNTY, TENNESSEE, (C) SUBMIT TO THE JURISDICTION OF SUCH COURTS, AND, (D) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREE THAT NONE OF THEM WILL BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM.

## GENERAL ALLEGATIONS

### *The PSA, Property Information and Seller Covenants*

8.      East Lake was formed by ELCM or one of its subsidiaries at ELCM's direction. ELCM is a company specializing in, among other things, acquiring, owning and operating senior living facilities and related businesses throughout the United States.

9.      On or about May 19, 2016 (the "**Effective Date**"), the Parties entered into the PSA, wherein East Lake agreed to purchase eight senior living facilities (the "**Facilities**") for the sum of $23,000,000 pursuant to the terms and conditions of the PSA.

10.      A true and correct copy of the PSA is attached hereto as **Exhibit A**.

11.      East Lake entered into the PSA because the Facilities are unique real estate properties and present a unique opportunity for ELCM to expand its senior living operations in Tennessee and increase its portfolio of senior living facilities.

12.      East Lake also entered into the PSA and agreed to the $23,000,000 purchase price because of the Seller Plaintiffs' numerous and express covenants, representations and  warranties in the PSA, including representations and warranties regarding the Seller Plaintiffs' business operations, the performance of the Facilities and the veracity of information about the Facilities that the Seller Plaintiffs' agreed to provide to East Lake under the PSA (collectively, the "**Property Information**") including financial documentation regarding the Seller Plaintiffs ("**Financial Documents**").

13.      For example, under Section 6.1(i), the Seller Plaintiffs represented and warranted that each of the Financial Documents "(i) is true and complete in all material respects as of the date indicated in such Financial Documents, (ii) was prepared in accordance with generally

accepted accounting practices consistently applied, and (iii) fairly presents all revenues, expenses and operations of the Property as a separate standalone business unit."

14. With respect to the Property Information, the Seller Plaintiffs agreed in Section 2.1 of the PSA to provide to East Lake, "within five (5) days after the Effective Date" ("**Initial Deadline**"), the Property Information expressly identified and listed in Schedule 2.1 of the PSA.

15. For example, Schedule 2.1 required the Seller Plaintiffs to produce prior to the Initial Deadline, certain historical and current financial statements, accounts receivable reports and other financial information regarding each of the Facilities including:

> all monthly, quarterly and annual income and expense statements, year-end financial and monthly operating statements, schedule of capital expenditures, accounts receivable reports, balance sheets, proposed capital and operating budgets and monthly trial balances for the Property [the Facilities] for the three (3) most recent calendar years prior to the Closing Date, and to the extent available, the current year, and monthly bank statements for all accounts relating to the Property for the preceding twelve (12) months.

16. The Property Information defined in Schedule 2.1 also included "copies of all other documents requested by Purchaser [East Lake] related to the construction, ownership, development, usage or operation of the Property which are within the Seller's [the Seller Plaintiffs'] Possession or Control" and which the Seller Plaintiffs agreed to produce "[o]n or before the fifth (5th) day after receiving the written request" from East Lake ("**Additional Information Deadline**"). Pursuant to the PSA, an item is within Seller's possession or control if it is "within the possession or reasonable control of Seller and its Affiliates, Seller's property manager, agents or third party advisors, consultants of contractors, including attorneys."

17. The Property Information listed in Schedule 2.1 is material information regarding the Facilities and necessary for East Lake to properly assess, underwrite and close the transaction. Indeed, absent the production and review of the Property Information, East Lake

could not underwrite the transaction or verify the historical performance representations that the Seller Plaintiffs made in order to induce East Lake to buy the Facilities for the $23,000,000 purchase price. This is precisely why the Property Information, and the Financial Documents specifically, were expressly identified and listed in Schedule 2.1 of the PSA.

18. The production of the Property Information prior to the Initial Deadline or the Additional Information Deadline, as applicable, is also a material term to the PSA because, among other things, it assured that East Lake could timely and adequately assess the transaction for underwriting and closing during the short due diligence and closing time periods the Parties agreed to in the PSA.

19. More specifically, in Article II of the PSA, the Parties agreed to a sixty (60) day due diligence period commencing on the Effective Date (the "**Due Diligence Period**") and a closing date within thirty (30) days of the expiration of the Due Diligence Period. Accordingly, the Seller Parties' agreement to deliver the Property Information prior to the Initial Deadline or the Additional Information Deadline, as applicable, and the Seller Parties' representations and warranties regarding the veracity of the Property Information are material terms and critical for East Lake to adequately assess the transaction for underwriting and closing during the Due Diligence Period. Indeed, East Lake would not have agreed to the terms of the PSA and the Due Diligence Period but for the Seller Plaintiffs' agreement to provide complete and accurate Property Information prior to the Initial Deadline or the Additional Information Deadline, as applicable.

20. Because the production of the Property Information prior to the Initial Deadline or the Additional Information Deadline, as applicable, is a material term and critical for East Lake to adequately assess the transaction for underwriting and closing during the Due Diligence

10

Period, the Parties agreed in Section 2.1 of the PSA that any delay in delivering the Property Information prior to the applicable deadline "shall extend the Due Diligence Period day for day" until such documents are delivered to East Lake.

21.     More specifically, Section 2.1 of the PSA provides, in pertinent part, that:

Any delay in the delivery of any material Property Information to Purchaser shall extend the Due Diligence Period day for day until delivery is made of such Property Information.

22.     In addition to the Seller Plaintiffs' agreement to timely produce accurate Property Information under Section 2.1 and Schedule 2.1 of the PSA, the Seller Plaintiffs agreed to numerous covenants before closing on the transaction under Article 9 of the PSA (collectively, the "**Seller Covenants**").

23.     For example, under Section 9.2, the Seller Plaintiffs agreed to deliver "a list of, and copies of, all contracts, agreements, permits or commitments, whether oral or written . . . binding upon or relating to the Real Property and/or the Improvements [the Facilities] . . . including all contracts to which [the Seller Parties or any of their affiliates] are a party."

24.     Under Section 9.4, the Seller Plaintiffs agreed to "operate and maintain, and cause to be operated and maintained, the [Facilities] in a professional manner, in the ordinary course and, in all material respects, in accordance with past practice and all applicable Laws."

25.     Under Section 9.6, the Seller Plaintiffs agreed to "[n]ot enter into (or extend, terminate, amend, renew or replace) any agreement, service contract, employment contract, permit or obligation affecting the [Facilities] that would be binding upon [East Lake] upon its acquisition of the Property" without East Lake's "prior written approval."

26.     Additionally, under Section 9.16, the Seller Plaintiffs agreed to "promptly notify" East Lake of "any breach" by the Seller Parties "of any of [their] representations, warranties or

11

covenants in this Agreement," or "any fact or event which would make . . . any of the representations or warranties of Seller contained in this Agreement untrue or misleading in any material respect" or "any covenant or agreement of Seller under this Agreement incapable or substantially less likely of being performed in any material respect."

*The Seller Plaintiffs' Failure to Timely Produce the Property Information*

27.     Following the execution of the PSA, the Seller Plaintiffs began the process of delivering the Property Information, including the Financial Documents, to East Lake via a data storage collaboration room created for the transaction by East Lake (the "**East Lake Drop Box**").  Although the Seller Plaintiffs did upload some of the Property Information to the East Lake Drop Box, the Seller Plaintiffs failed to deliver a majority of the required Property Information prior to the Initial Deadline.

28.     On June 22, 2016, and pursuant to the terms of the PSA, East Lake delivered a written notice (the "**June 22 Notice**") to the Seller Plaintiffs regarding the Seller Plaintiffs' failure to provide all of the Property Information as required by Section 2.1 and Schedule 2.1 of the PSA.

29.     A true and correct copy of the June 22 Notice is attached hereto as **Exhibit B**.

30.     In the June 22 Notice, and pursuant to Section 2.1 of the PSA, East Lake provided the Seller Plaintiffs with a list of specific Property Information from Schedule 2.1 that was not delivered to East Lake and requested the Seller Plaintiffs provide East Lake with the information and documents.

31.     After receiving the June 22 Notice, the Parties executed that certain First Amendment of Purchase and Sale Agreement (the "**First Amendment**"), whereby the Parties agreed to amend and extend the Due Diligence Period set forth in the PSA to August 18, 2016.

4851-8062-9049.6

32.     A true and correct copy of the First Amendment is attached hereto as part of Exhibit A.

33.     Despite receiving the June 22 Notice and executing the First Amendment, the Seller Plaintiffs failed to deliver all of the required Property Information to East Lake within ten days of the June 22 Notice.

34.     Pursuant to Section 8.2 of the PSA, the Seller Plaintiffs' failure to deliver the omitted Property Information within ten days after the June 22 Notice constitutes a "Seller Default" under the PSA.

35.     On August 3, 2016, and pursuant to the terms of the PSA, East Lake delivered to the Seller Plaintiffs an additional written notice (the "**August 3 Notice**") regarding the Seller Plaintiffs' failure to timely provide all the required Property Information to East Lake.

36.     A true and correct copy of the August 3 Notice is attached hereto as **Exhibit C**.

37.     In the August 3 Notice, East Lake provided the Seller Plaintiffs with a list of the specific and material Property Information the Seller Plaintiffs failed to timely deliver and advised the Seller Plaintiffs that their delay in delivering such information and documents extends the Due Diligence Period "day for day" until such delivery is made under Section 2.1 of the PSA.

38.     In the August 3 Notice, East Lake also advised the Seller Plaintiffs that their failure to deliver certain required Property Information constitutes a "Seller Default" under the PSA entitling East Lake to exercise its remedies including, without limitation, the remedy of specific performance available to East Lake under Section 8.2(ii) of the PSA.

39.     In particular, Section 8.2(ii) of the PSA provides that, in the event of a Seller Default, East Lake shall be entitled "to enforce specific performance of Seller's obligations to

convey the Property to Purchaser in accordance with the terms of this Agreement, and . . . be entitled to reimbursement [by Seller] of Purchaser's Expenses." The PSA defines "Purchaser's Expenses" as "any and all documented out-of-pocket costs and expenses incurred in connection with this Agreement [the PSA] and the Transactions contemplated hereby [the PSA] by Purchaser or Purchaser's Affiliates."

40. On August 8, 2016, the Seller Plaintiffs provided a written response to the August 3 Notice to East Lake (the "**August 8 Letter**").

41. A true and correct copy of the August 8 Letter is attached hereto as **Exhibit D**.

42. In the August 8 Letter, the Seller Plaintiffs advised that they created a new data storage collaboration room (the "**Seller Drop Box**") and uploaded all of the requested and previously omitted Property Information for East Lake's review including "all of the information requested" in the June 22 and August 3 Notices.

43. In the August 8 Letter, the Seller Plaintiffs disputed the existence of any Seller Default under the PSA and argued, to the extent any Seller Default did exist, the Seller Plaintiffs somehow cured any such default by providing East Lake with access to the Seller Drop Box.

44. In the August 8 Letter, and despite the fact the Seller Plaintiffs claimed they uploaded all of the requested and previously omitted Property Information on August 8, 2016 (approximately 81 days after the Effective Date), the Seller Plaintiffs also denied that they delayed the delivery of any material Property Information to East Lake and that East Lake was entitled to the "day for day" extension of the Due Diligence Period the Parties agreed to in Section 2.1 of the PSA.

4851-8062-9049.6

45.     After receiving the August 8 Letter, and rejecting the Seller Plaintiffs' position that there was no delay in the delivery of the Property Information to East Lake, East Lake began accessing and reviewing the documents the Seller Plaintiffs uploaded to the Seller Drop Box.

46.     In the Seller Drop Box, the Seller Plaintiffs made available for the first time much of the Property Information that should have been delivered by the Initial Deadline.

47.     For example, one of the categories of Financial Documents that the Seller Plaintiffs were required to deliver to East Lake in Schedule 2.1 by the Initial Deadline all "accounts receivable [AR] reports" for the Seller Plaintiffs for three most recent calendar years prior to the Closing Date.  Prior to August 8, 2016, the Seller Plaintiffs uploaded only three files relating to AR reports (totaling 121kb of data) to the East Lake Drop Box.  Further, these 3 files related to only one of the four Seller Plaintiffs and, incredibly, only provided 3 months of AR reports for this Seller Plaintiff.  On August 8, 2016, the Seller Plaintiffs uploaded 126 files relating to AR reports for three of the four Seller Plaintiffs (totaling 1.85mb of data) to the Seller Drop Box.

48.     On August 12, 2016, and due to the Seller Plaintiffs' failure to timely deliver the Property Information as required under the PSA, the Parties executed that certain Second Amendment of Purchase and Sale Agreement (the "**Second Amendment**"), whereby the Parties agreed to extend the Due Diligence Period to October 2, 2016.

49.     A true and correct copy of the Second Amendment is attached hereto as part of Exhibit A.

50.     Significantly, in the Second Amendment, the Seller Plaintiffs acknowledged that they delivered certain material Property Information on August 8, 2016 and that such Property Information was due to be delivered on May 24, 2016.

51.     After East Lake reviewed the August 8 letter and the information in the Seller Drop Box, East Lake (i) discovered that material Property Information had still not been delivered by Seller Plaintiffs, and (ii) discovered that the Property Information that had been delivered by Seller Plaintiffs disclosed additional circumstances for which East Lake required additional Property Information.   As a result, East Lake sent Seller Plaintiffs a notice dated September 22, 2016 (the "**September 22 Notice**") in which East Lake notified Seller Plaintiffs of such discoveries and requested the additional Property Information.   Seller Plaintiffs failed to provide either the omitted Property Information from Seller Plaintiffs' August 8 delivery or the additional Property Information requested in the September 22 Notice within ten days after the September 22 Notice and therefore additional Seller Defaults have occurred as a result.   East Lake sent Seller Plaintiffs a notice dated October 4, 2016 notifying Seller Plaintiffs in detail of the occurrence of such additional Seller Defaults. A true and correct copy of the October 4, 2016 Notice is attached hereto as **Exhibit E**.

52.     Although the Seller Plaintiffs have now delivered much of the requested and omitted Property Information, the Seller Plaintiffs have yet to provide all of the Property Information as required by the PSA including, without limitation, all of the Property Information identified in the June 22, August 3 and September 22 Notices.

### *The Seller Plaintiffs' Breach of their Representations and Warranties*

53.     In addition to failing to timely deliver all Property Information to East Lake as required under the PSA, the Seller Plaintiffs breached their representations and warranties under Section 6.1(i) of the PSA.

54.     More specifically, East Lake has discovered that the Financial Documents of Seller Parties (i) were not true and complete in all material respects as of the date indicated in

such Financial Documents, (ii) were not prepared in accordance with generally accepted accounting practices consistently applied; and (iii) did not fairly present all revenues, expenses and operations of the Property as a separate standalone business unit.

55.     Pursuant to the PSA, East Lake notified the Seller Plaintiffs of their default under Section 6.1(i) in numerous email communications and correspondence including, without limitation, a default notice sent to the Seller Plaintiffs on July 22, 2016 (the "**July Default Notice**").

56.     A true and correct copy of the July Default Notice is attached hereto as **Exhibit F**.

57.     The Seller Plaintiffs' breach of their representations and warranties in Section 6.1(i) of the PSA also constitutes a "Seller Default" under Section 8.2 of the Agreement entitling East Lake to reimbursement of its Purchaser's Expenses and to exercise its remedies under the PSA including, without limitation, the remedy of specific performance provided under Section 8.2(ii) of the PSA.

### *The Seller Plaintiffs' Breach of their Seller Covenants*

58.     In addition to the Seller Plaintiffs' default under the PSA for failing to timely and fully produce the Property Information and breaching their representations and warranties regarding the veracity of the Financial Documents, the Seller Plaintiffs have also breached a number of their Seller Covenants under Article 9 of the PSA.

59.     For example, the Seller Plaintiffs breached their Seller Covenants in Section 9.2 by failing to deliver to East Lake copies of all third-party contracts executed by the Seller Plaintiffs or their affiliates and which relate to the Facilities.

60.     The Seller Plaintiffs have also failed to "operate and maintain, and cause to be operated and maintained, the [Facilities] in a professional manner, in the ordinary course and, in

all material respects, in accordance with past practice and all applicable Laws" in violation of their Seller Covenants in Section 9.4 by, among other things, modifying their operating procedures and failing to maintain adequate records related to Medicaid.

61.     The Seller Plaintiffs have also breached their Seller Covenants in Section 9.6 by, among other things, failing to obtain East Lake's consent before entering into certain contracts.

62.     Additionally, the Seller Plaintiffs breached their Seller Covenants in Section 9.16 by failing to promptly notify East Lake of their numerous defaults under the PSA and of facts that would make their representations or warranties in the PSA "untrue or misleading in any material respect."  Seller and/or Seller Affiliates relating to the Property.

63.     On September 22, 2016, East Lake sent the Seller Plaintiffs the September 22 Notice detailing, among other things, the Seller Plaintiffs' default of their Seller Covenants under Article 9 of the PSA.

64.     A true and correct copy of the September 22 Notice is attached hereto as **Exhibit G**.

65.     Notwithstanding the fact that the Seller Plaintiffs' received the September 22 Notice, the Seller Plaintiffs have failed to cure such defaults.  Accordingly, the Seller Plaintiffs' breach of their Seller Covenants in Article 9 of the PSA also constitutes a "Seller Default" under Section 8.2 of the Agreement entitling East Lake to reimbursement of its Purchaser's Expenses and to exercise its remedies under the PSA including, without limitation, the remedy of specific performance provided under Section 8.2(ii) of the PSA.

66.     With respect to East Lake's Purchaser's Expenses, East Lake and its affiliates have incurred significant out-of-pocket expenses in connection with this transaction, the Seller Plaintiffs' failure to provide the required Property Information, the Seller Plaintiffs' breach of

18

their representations and warranties under Section 6.1(i) of the PSA, and the Seller Plaintiffs' breach of their Seller Covenants under Article 9 of the PSA. Although these expenses continue to mount because the Seller Plaintiffs' have yet to provide all of the required Property Information, East Lake estimates its expenses at this time to be in excess of $1,000,000.

**FIRST COUNTERCLAIM FOR RELIEF**
**(Breach of Contract – Specific Performance)**

67. East Lake hereby incorporates the allegations set forth in paragraphs 1 through 66 of the Counterclaim as if specifically set forth herein.

68. The PSA is a valid and binding agreement between the Parties, whereby the Seller Plaintiffs agreed to provide to East Lake all Property Information prior to the Initial Deadline or the Additional Information Deadline, as applicable, and to perform their Seller Covenants.

69. East Lake has performed all of its obligations under the PSA and all conditions precedent to enforce the PSA have been met or satisfied by East Lake.

70. The Seller Plaintiffs breached the PSA by, among other things, failing to timely deliver all of the required Property Information to East Lake, failing to perform their Seller Covenants under Article 9 of the PSA, and breaching their representations and warranties regarding the Financial Documents under Section 6.1(i) of the PSA.

71. The Seller Plaintiffs' numerous breaches of the PSA constitute a "Seller Default" under Section 8.2 of the PSA.

72. The Seller Plaintiffs have not cured their Seller Default(s) and, as of the date of this Counterclaim, continue to be in default under Sections 2.1, 6.1, 9.2, 9.4, 9.6 and 9.16 of the PSA.

73. Additionally, the Seller Plaintiffs' failure to timely provide the omitted and requested Property Information constitutes a material breach of the Seller Plaintiffs' obligations

under the PSA and extends the Due Diligence Period pursuant to the clear and unambiguous terms of the PSA.

74.     Notwithstanding the same, the Seller Plaintiffs deny any such defaults exist, are refusing to acknowledge their delay in delivering the Property Information extends the Due Diligence Period under Section 2.1 of the PSA, and are asserting the Due Diligence Period expires on October 2, 2016.

75.     Under Section 8.2 of the PSA, the Parties agreed that, in the event of a Seller Default, East Lake shall be entitled to "enforce specific performance of Seller's obligations to convey the Property to Purchaser in accordance with the terms of this Agreement, and Purchaser shall be entitled to reimbursement of Purchaser's Expenses."

76.     There is no adequate remedy at law to remedy the Seller Plaintiffs' defaults under the PSA.  East Lake requires the remaining and omitted Property Information to adequately assess and underwrite the transaction before the Closing Date.  East Lake also requires the agreed extension of the Due Diligence Period to adequately review and analyze the Property Information once it is delivered before closing on the transaction and purchasing the Facilities. East Lake also requires that the Seller Plaintiffs comply with their Seller Covenants under Article 9 in order to close the transaction.  Indeed, without the required Property Information, the extended Due Diligence Period and the Seller Plaintiffs' compliance with Section 9.2, 9.4, 9.6 and 9.16 of the PSA, East Lake cannot close the transaction and stands to lose its right to purchase the unique Facilities in accordance with the terms of the PSA.

77.     Further, East Lake cannot be adequately compensated for the Seller Plaintiffs' breach of the PSA because the PSA concerns the purchase of unique real estate and the

ownership of the Facilities presents a unique business and investment opportunity for East Lake and its affiliates.

78. Pursuant to Section 8.2(ii) of the PSA, and because there is no remedy available to East Lake to adequately address the Seller Plaintiffs' breach of the PSA, East Lake is entitled to a reimbursement of all of East Lake's Purchaser's Expenses and to specific performance of the Seller Plaintiffs' obligations to convey the Facilities to East Lake in accordance with the terms of the PSA including, without limitation, the Seller Plaintiffs' obligations to deliver all of the Property Information to East Lake, to extend the Due Diligence Period "day for day" until all Property Information has been provided, and to comply with their Seller Covenants under Sections 9.2, 9.4, 9.6 and 9.16 of the PSA.

## SECOND COUNTERCLAIM FOR RELIEF
### (Declaratory Judgment)

79. East Lake hereby incorporates the allegations set forth in paragraphs 1 through 78 of the Counterclaim as if specifically set forth herein.

80. Pursuant to Section 2.1 of the PSA, the Seller Plaintiffs agreed to provide all Property Information prior to the Initial Deadline or the Additional Information Deadline, as applicable.

81. Pursuant to Section 2.1 of the PSA, the Parties agreed that "any delay in the delivery of any material Property Information to [East Lake] shall extend the Due Diligence Period day for day until delivery is made of such Property Information."

82. The Seller Plaintiffs have failed to deliver all the required Property Information and their delay in providing such information extends the Due Diligence Period "day for day" until such delivery.

83. All of the Property Information identified and requested in the June 22 Notice, the August 3 Notice, and the September 22 Notice is "material."

84. Although the Seller Plaintiffs only recently began delivering some of the required Property Information to East Lake, they have nevertheless asserted that the Due Diligence Period has not been extended under Section 2.1 of the PSA. Thus, according to the Seller Plaintiffs, the Due Diligence Period expires on October 2, 2016. Accordingly, there is an active and justiciable dispute among the Parties regarding the Parties' respective rights, relations and duties under the PSA.

85. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that this Court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

86. Fed. R. Civ. P. 57 provides that "existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate" and that this Court "may order a speedy hearing of a declaratory judgment action."

87. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, East Lake is entitled to a declaratory judgment adjudicating, decreeing and determining that (a) the Seller Plaintiffs have failed to timely deliver all of the required and material Property Information pursuant to Section 2.1 of the Agreement; and (b) the Seller Plaintiffs' delay in delivering all of the required and material Property Information has extended (and will continue to extend) the Due Diligence Period "day for day" until delivery is made of all such Property Information.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaim Plaintiff East Lake Acquisition Company IV LLC respectfully requests that the Court enter judgment in its favor and against Defendants

CC Holdings, LLC, CC Briarcliff, LLC, Continuum Courtyards, LLC, and Courtyards Briarcliff, LLC on the claim asserted herein as follows:

A. With respect to its First Claim for Relief, East Lake requests that judgment enter in its favor and against the Seller Plaintiffs and that the Seller Plaintiffs be ordered to reimburse East Lake for its Purchaser's Expenses as required under Section 8.2(ii) of the PSA and to specifically perform their obligations to convey the Facilities to East Lake in accordance with the terms of the PSA including, without limitation, to (i) deliver all Property Information to East Lake; (ii) extend the Due Diligence Period "day for day" until all Property Information has been delivered; and (c) comply with their Seller Covenants in Sections 9.2, 9.4, 9.6 and 9.16 of the PSA;

B. With respect to its Second Claim for Relief, East Lake requests that the Court hold a "speedy hearing" pursuant to Fed. R. Civ. P. 57 and that it enter a declaratory judgment in East Lake's favor adjudicating, decreeing and determining that (i) the Seller Plaintiffs have failed to timely deliver all of the required and material Property Information pursuant to Section 2.1 of the Agreement; and (ii) the Seller Plaintiffs' delay in delivering all of the required and material Property Information has extended (and will continue to extend) the Due Diligence Period "day for day" until delivery is made of all such Property Information;

C. An award of East Lake's expenses associated with this litigation including its reasonable attorneys' fees and costs pursuant to Section 8.2 of the PSA and the applicable law of Tennessee; and

D.  Any such other and further relief this Court deems just and proper under the circumstances.

Respectfully submitted this 4th day of October, 2016.

WALLER LANSDEN DORTCH & DAVIS, LLP

By: s/W. Travis Parham
    W. Travis Parham, Esq. (TN# 16846)
    511 Union Street, Suite 2700
    Nashville, TN 37219
    (615) 244-6380
    travis.parham@wallerlaw.com

*Attorney for Defendant*
*East Lake Acquisition Company IV LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2016, the foregoing was electronically filed using the Court's ECF System, which will serve notice upon the following counsel of record:

Daryl R. Fansler
BERNSTEIN, STAIR & McADAMS, LLP
116 Agnes Road
Knoxville, Tennessee 37919
dfansler@bsmlaw.com

s/ W. Travis Parham
Counsel for Defendant

24